UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: Sandia Tobacco Manufactures, Inc.,
Domestic Profit Corporation,

Debtor.                                                                                    No. 16-12335-j11

## STATES' OBJECTION TO DEBTOR'S MOTION TO ASSUME LEASE

On January 12, 2017, the Debtor filed its *Motion to Assume Unexpired Lease with Gardner Zemke Company* (Doc. 43) ("Motion") seeking to assume the remaining four years of a seven-year lease. The States of Alaska, New Mexico, California, Nevada, Oregon, Washington, and Oklahoma (collectively "States") object to the relief requested in this Motion because the Debtor has failed to provide an adequate business reason for assuming this lease so early in this Chapter 11 case before a plan has been proposed, or even discussed, and needlessly risks subjecting the estate to a $300,000+ administrative claim if this lease must later be rejected. In support of their Objection, the States provide as follows.

1.  The Debtor filed for Chapter 11 bankruptcy protection on September 16, 2016. The Debtor continues in possession of its assets and operates its business as a debtor-in-possession.

2.  The States regulate the Debtor's sale of cigarettes and other tobacco products in their respective states. The Debtor holds a tobacco product distributor's license and/or a tobacco manufacturers' license in several of these States and is certified to sell its cigarette brands in many of them. As part of their regulatory responsibilities, the States enforce certain laws that require the Debtor, as a "Non-Participating Manufacturer" ("NPM")[1], to deposit into an escrow

---

[1] Tobacco manufacturers fall into two categories: those that have settled with the States and become "Participating Manufacturers" of "PMs" under the tobacco Master Settlement Agreement executed in November 1998 and make direct payments to the States in recognition of the health care costs imposed by their products, and those that have

account, held for the benefit of each State, $6.55 per carton of cigarettes sold in that State.[2]
Failure to make timely escrow deposits can result in removal of the Debtor from a State's directory of approved tobacco manufacturers (a process called "delisting"), the treatment of the Debtor's products as unlawful contraband, and a requirement that the Debtor immediately cease making any further cigarette sales.[3] The States believe that the Debtor has failed to deposit about $100,000 in escrow deposits owed for pre-petition cigarette sales and will be seeking appropriate relief requiring that such deposits be made. The States are parties in interest in this case.

3. The Debtor seeks authority to assume its real-estate lease for its business located at 7900 Reading Dr. SE, Bldg B, in Albuquerque, New Mexico ("Reading Property"). The Motion states that the Lease is for a term of seven years and four months and that it began in December 2013. This means that it will expire in March 2021, and that it has more than four years remaining.

4. The Motion further states that the monthly rent ranges from $5,987.19 (December 2013) to $6,877.40 (in 2021). Assuming that the average monthly rent for the remaining term of the lease is at least $6,300 (the rental schedules were not attached to the Motion), this would result in at least $308,700 being owed under the Lease through its expiration date. If the Debtor assumes this long-term lease and is then unable to confirm a plan or otherwise remain in

---

not settled, the NPMs, who must instead make deposits into an escrow account that are roughly equivalent in cost to the payments made by the PMs. The escrow account holds funds that may be utilized to satisfy judgments brought by the States with respect to the tobacco sales made by the NPMs.

[2] Each State has an escrow statute requiring NPMs to make escrow deposits on their cigarette sales, and these laws are substantially similar to each other. As an example, New Mexico's escrow statute is codified at NMSA §§ 6-4-12 to 6-4-13.

[3] Collectively, these laws are called "Directory Laws" and were passed to by states to enhance their ability to enforce their escrow statutes. Each State has passed Directory Laws, and they are substantially similar to each other. New Mexico's Directory Laws are codified at NMSA §§ 6-4-14 to 6-4-24.

2

business, this decision needlessly risks subjecting the bankruptcy estate to a $300,000+ administrative expense, much or all of which may have been unnecessary.

5. As discussed further below, the Debtor has significant pre-petition priority tax debts and only minimally performing business operations post-petition, the combination of which calls into serious question whether this business can be reorganized or even sold as a going concern. Given these circumstances, the Debtor can, and should, wait until confirmation of a plan to decide whether to assume this lease. Conversely, assuming this lease at the present time is not in the best interest of creditors and not justified by the business reasons stated in the Motion.

6. The three monthly operating reports from October through December 2016 show net income in the following amounts: 14,285.12, -15,529.99, and $10,236.60 (see page 8 of Docket Nos. 36, 39, and 49, respectively). In sum, the Debtor has cleared less than $9,000 in its first three full months of operations post-petition. In addition, as of the end of December 2016, the Debtor's estate had an ending cash balance of only $102,875.57 (Docket No. 49, p. 2). Even looking at the entire period from January to September 2016, as set out in the Debtor's initial operating report (Docket No. 22, p. 9), the Debtor's net income totaled only $126,347.93. Moreover, the Debtor acknowledges in its *Statement Pursuant to 11 U.S.C. §521(a)(1)(B)(vi)* (Docket No. 7) that it "does not anticipate any material changes in income and expenses" during the year following the petition date, which suggests that even the Debtor expects its business operations to continue to perform very poorly.

7. The above paltry amounts for cash and earnings are contrasted with the significant pre-petition priority tax debts the Debtor has incurred. Those include $4,717,090.84 owed to the

3

U.S. Department of Agriculture ("USDA") (Claim #7), all of which is asserted to be priority, and $597,618.27 owed to the U.S. Alcohol & Tobacco Tax and Trade Bureau ("TTB") (Claim #13), of which $143,010.76 is asserted to be a priority tax debt. Thus, against net quarterly earnings of less than $10,000, the Debtor faces a priority tax claim of almost $5 million, which, under Section 1129(a)(9)(C) must be paid within not more than five years from the petition date in order for the Debtor to have a feasible and confirmable plan.

8. In addition, the Debtor had ceased manufacturing tobacco products before filing for bankruptcy, and post-petition only operates as a distributor of tobacco products. According to its most recent monthly operating report (Docket No. 49, pp. 26, 37), it employs only four people, two of whom are owners of the Debtor –Donna Woody and Donald Packingham.

9. To date, the Debtor has taken no steps to date to formulate a plan, to sell its business, or to object to the filed claims to challenge their validity, amount, or priority.

10. Given the Debtor's limited business operations, its minimal profits post-petition, and the nearly $5 million in priority debt that must be repaid within five years, even apart from any other debts, it is difficult to imagine any feasible basis upon which the Debtor can proceed to reorganize its business or to sell it as a viable going concern. Accordingly, it is premature for the Debtor to assume a long-term lease for its business operations, and such assumption would not be in the best interest of creditors.

11. In its Motion, the Debtor asserts two reasons for needing to assume this long-term lease: (1) it needs this location to be able to continue its business operations, and (2) it would be expensive for the Debtor to move locations and a move would interrupt its business operations. It has stated that the timing is dependent on the 120-day limitation period contained in Section

365(d)(4)(A)(i). However, that provision is explicitly modified by Section 365(d)(4)(B)(i), which allows the court to extend the time limit for 90 days for cause and to extend it for further periods of time with the landlord's consent. The factors cited by the Debtor as grounds for assuming the lease are plainly adequate to supply cause to extend the period of time for making the determination. Nor is there any showing that the landlord would not consent to the extension of time inasmuch as the Debtor is current on its lease payments. There is no indication that the lessor has taken any action to remove or evict the Debtor from this property or that it would have any basis to do so.

12. Extending the period for determination of this issue would also allow the parties to be able to determine whether or not the Debtor actually intends to take steps to consummate a plan or a sale herein. The 120-day exclusivity period under Section 1121(b) for the Debtor to file a plan has already expired as of mid-January, and the Debtor has, as noted above, made no concrete progress in this case towards its stated goals, nor has it sought to extend that period. As such, it should not be taking steps that would make resolving the case more difficult than it already is.

WHEREFORE, the States asks this Court to limit any relief to an extension of the time for the decision to be made on assuming the lease.

Respectfully submitted,

PATRICIA MOLTENI

/s/ electronically filed 2/2/17
Patricia Molteni, Esq.
Karen Cordry, Esq.
Counsel for the States

National Association of Attorneys General

5

2030 M Street N.W.<br>
Washington D.C. 20036<br>
(202)326-6251<br>
pmolteni@naag.org<br>
kcordry@naag.org

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the above pleading was electronically filed on February 2, 2017. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

**/s/ electronically filed on 02/02/2017**
Patricia Molteni, Esq.

6

Case 16-12335-j11    Doc 54    Filed 02/02/17    Entered 02/02/17 11:51:09 Page 6 of 6