UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   Sandia Tobacco Manufactures, Inc.,
         Domestic Profit Corporation,

Debtor.                                                              No. 16-12335-j11

## STATES' OBJECTION TO THE DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT OF THE DEBTOR'S PLAN DATED APRIL 2, 2018

The States[1] object to the *Debtor's Disclosure Statement in Support of the Debtor's Plan Dated April 2, 2018* ("Disclosure Statement") because it fails to provide adequate information as required under § 1125 of the Bankruptcy Code. Specifically, disclosures on the below matters are inadequate making it impossible for creditors to make an informed judgment about the plan.

1.    **Background.**  The States regulate the Debtor's sale of cigarettes and other tobacco products in their respective states. The Debtor holds a tobacco product distributor's license and/or a tobacco manufacturers' license in several of these States and was, but no longer is, certified to sell its cigarette brands in any of them. As part of their regulatory responsibilities, the States enforce certain laws that require the Debtor, as a "Non-Participating Manufacturer" ("NPM")[2], to deposit into an escrow account, held for the benefit of each State, $6.55 per carton of cigarette units sold in 2017 in each State.[3] Failure to make timely escrow deposits can result

---

[1] "States" refers collectively to the tobacco regulatory agencies of the States of Alaska, Arizona, Colorado, California, Idaho, Kansas, Missouri, Nebraska, New York, Nevada, Oklahoma, Oregon, and Washington—in all of which the Debtor has previously sold tobacco products.

[2]  Tobacco manufacturers fall into two categories: those that have settled with the States and become "Participating Manufacturers" or "PMs" under the tobacco Master Settlement Agreement executed in November 1998 and make direct payments to the States in recognition of the health care costs imposed by their products, and those that have not settled, the NPMs, who must instead make deposits into an escrow account that are roughly equivalent in cost to the payments made by the PMs. The escrow account holds funds that may be utilized to satisfy judgments obtained by the States in cases filed against the NPMs with respect to their tobacco sales.

[3] Each State has an escrow statute requiring NPMs to make escrow deposits on their cigarette sales, and these laws are substantially similar to each other. As an example, New Mexico's escrow statute is codified at NMSA §§ 6-4-12

1

in removal of the Debtor from a State's directory of approved tobacco manufacturers (a process called "delisting"), the treatment of the Debtor's tobacco products as unlawful contraband, and a requirement that the Debtor immediately cease making any further cigarette sales in that State.[4] Currently, the Debtor is not listed on any State directory and was most recently delisted from New Mexico and Nevada's directories for failure to qualify as a tobacco product manufacturer and for failure to deposit the required escrow on cigarette sales made post-petition into those states.

2. **The USDA Claim.** The United States Department Agriculture ("USDA") filed a timely proof of claim for priority taxes under § 507(a)(8) in the amount of $4,717,090.84. (Claim No. 7). This is the single, largest, non-insider claim in this case. The Disclosure Statement lists $1,173,168.26 of this claim as a priority tax and the remainder ($3.5 million) as a general unsecured claim. (D.S. at p. 11; and Ex. H). The Debtor objected to this claim and has been litigating this dispute, but, to date, there has not been a final decision or a trial date set. Because of the magnitude and priority of this claim, it is not possible to make an informed judgment about Debtor's plan without a resolution to this claim dispute. In addition, the Plan cannot be confirmed without full payment of priority tax claims, unless the tax creditor agrees otherwise. There is no information in the Disclosure Statement indicating if the USDA would consent to less than payment in full on its claim. Accordingly, the Disclosure Statement fails to contain adequate information for creditors to make an informed judgment about the plan as required under § 1125(a)(1).

---

to 6-4-13. The $6.55 was the amount required to be deposited for sales made in 2017; it is adjusted for inflation each year.

[4] Collectively, these laws are called "Directory Laws" and were passed by the State to enhance their ability to enforce their escrow statutes. Each State has passed Directory Laws, and they are substantially similar to each other. New Mexico's Directory Laws are codified at NMSA §§ 6-4-14 to 6-4-24.

3. **Sale of the Escrow Accounts.** The funding for the Plan primarily rests on the proposed sale of the Debtor's escrow account (through assumption of the underlying escrow agreement and assignment of it to the buyer) bundled with the Royal brand trademark and the Sandia brand trademark to Xcaliber International, Ltd., LLc ("Xcaliber")for $800,000. Xcaliber is a tobacco product manufacturing company located in Pryor, Oklahoma and currently listed on the approved tobacco manufacturer directory of many states. Significantly, the Sandia brand is owned by WM Distribution, Inc. ("WM"), a debtor in a separate bankruptcy case. In addition, Susan Jesmer d/b/a/ Native Trading ("Native Trading") asserts a lien on the Sandia trademark and has sought permission to credit bid $400,000 of its claim to purchase the Sandia brand. WM has objected to Native Trading's claim and asserts that the latter is owed nothing. The court has not yet ruled on the merits of this claim dispute or on Native Trading's request to credit bid. As a result, no bidding procedures or hearing date has been set on the proposed asset sale to Xcaliber. The Plan relies on this proposed sale to generate the vast majority of the cash needed to fund the Plan. Without a resolution of Native Trading's claim dispute or approval of the sale to Xcaliber, it is not possible to determine is the Plan is feasible and thereby to make an informed judgment about the Debtor's Plan.

4. **Past Due Escrow Deposits.** The Disclosure Statement and Plan incorrectly list the cure amount for past due escrow deposits as $30,270.00. (Disclosure Statement, p. 18). The cure amount consists of all outstanding escrow owed on any of the Debtor's cigarette sales (both pre-petition and post-petition), which totals about $150,000. As explained in the States' Limited Objection to the Sale Motion (Doc. #319), the Debtor owes, for pre-petition sales, escrow in the aggregate amount of $125,379.49 for sales made in New Mexico ($103,664.21), California ($21,675.02) and Alaska ($40.26). And for post-petition sales, it owes escrow in the estimated

amount of $4,000 for sales in Nevada and $25,000+ for sale in New Mexico.  Together, outstanding escrow totals about $150,000.00, not the $30,270.00 shown in the Disclosure Statement.

5. In addition, the Plan classifies the New Mexico escrow in the amount of $103,664.21 as a priority tax claim and the California and Alaska escrow as general unsecured claims.  This disparate classification is impermissible, and the Disclosure Statement fails to provide any justification for it or explain the basis for each classification.

6. **Feasibility of the Plan.**  The Disclosure Statement states that "the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date" and that "[a] listing showing the amount of cash on hand on the effective date of the Plan and the sources of that cash are attached to this disclosure statement as Exhibit F."  (Disclosure Statement, p. 23). However, Exhibit F is blank and states, "Cash on hand figures will be supplied prior to the Hearing on the Disclosure Statement." (Disclosure Statement, Ex. F).  Without this financial information, it is not possible to determine the feasibility of the plan or to have adequate information on which to vote on the Plan.

7. **The Discharge, Injunction, and Reorganized Debtor**.   The Disclosure Statement and Plan state that the Debtor will receive a discharge of debts under 11 U.S.C. § 1141(d)(1)(A), which allows for discharge of all pre-confirmation debts.  However, this provision is not applicable, and the Debtor is not entitled to discharge any of its debts.  Because the Debtor is not an individual, is selling all or substantially all of its assets, and is not engaging in business after confirmation,  section 1141(d)(3) applies to the Plan, and this provision does not allow for a discharge of debts.  The Disclosure Statement and Plan are incorrect in their description of the Debtor's discharge of debts.

4

**8.** Similarly, the Injunction provided for in ¶ 9.02 of the Plan is also impermissible. Because the Debtor is not eligible to receive a discharge of its debts, it is not entitled to the discharge injunction set forth in ¶ 9.02 of the Plan.

**9.** Lastly, the Plan refers to the "Reorganized Debtor" throughout Article X. As explained above, because this is a plan of liquidation, there is no Reorganized Debtor and none of the provisions in this Article apply in the context of this Plan. The Disclosure Statement and Plan are incorrect in this reference and all of Article X should be revised accordingly.

WHEREFORE, the States asks this Court to deny approval of the Disclosure Statement as adequate.

Respectfully submitted,

PATRICIA MOLTENI

/s/ electronically filed 5/21/2018
Patricia Molteni, Esq
Karen Cordry, Esq.
Counsel for the States

National Association of Attorneys General
1850 M Street N.W.
Washington D.C. 20036

I CERTIFY that I filed the foregoing electronically with the Court via the CM/ECF system. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing. I certify that I mailed the foregoing by first class mail to the following parties, at the addresses listed below, on May 21, 2018: none.

/S/ Patricia Molteni