UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: SANDIA TOBACCO MANUFACTURERS, INC.,     No. 16-12335-j11
A New Mexico corporation,

Debtor.

# MEMORANDUM OPINION

At a preliminary hearing on the Debtor's Motion Pursuant to 11 U.S.C. § 365(f) and (m) to Sell Property Free and Clear of Interests ("Motion to Sell") and other motions[1], the Court determined that it should determine whether Bailey Tobacco Corporation ("Bailey") and Cousins Distributing, Inc. ("Cousins") have standing to appear and be heard in connection with the Motion to Sell and related motions.[2] *See* Order Resulting from Preliminary Hearing (Docket No. 414). Sandia Tobacco Manufacturers, Inc. ("Sandia Tobacco" or "Debtor") asserts that neither

---

[1] The following motions were set for preliminary hearing before the Court that day:
  1. Motion to Sell (Docket No. 356);
  2. Debtor's Motion to Assume and Assign Escrow Agreements Under § 365 ("Motion to Assume and Assign") (Docket No. 382);
  3. Debtor's Motion to Approve Auction Procedures (Docket No. 380);
  4. Motion to Strike Pleading Under FRCP 7017 (a) (Docket No. 394);
  5. Motion to Strike Pleading Under FRCP 7017(a) (Docket No. 397); and
  6. Motion to Strike Pleading Under FRCP 7017(a) (Docket No. 400).

[2] Bailey filed the following objections:
  1. Bailey Tobacco Corporation's Objection to Debtor's Motion to Assume and Assign Escrow Agreements Under 11 U.S.C. § 365 (Docket No. 393);
  2. Bailey Tobacco Corporation's Objection to Debtor's Motion to Approve Auction Procedures (Docket No. 391);
  3. Bailey Tobacco Corporation's Objection to Debtor's Motion Pursuant to 11 U.S.C. § 363(f) and (m) to Sell Property Free and Clear of Interests (Docket No. 370); and
  4. Bailey Tobacco Corporation's Objection to Debtor's Motion to Strike Objection to Approve Auction Procedures (Docket No. 412)

Cousins "and its successors" filed the following objections:
  1. Objection to Debtor's Motion to Assume or Assign Escrow Agreements Under 11 U.S.C. § 365 and Objection to Debtor's Motion to Approve Auction Procedures filed by Cousins "and its successors and agents" (Docket No. 392);
  2. Objection to Debtor's Motion Pursuant to 11 U.S.C. § 363(f) and (m) to Sell Property Free and Clear of Interests (Docket No. 368); and
  3. Objection to Debtor's Motion to Strike Objections to Motion to Assume or Assign Escrow Agreements Under 11 U.S.C. § 365 and Objection to Debtors' Motion to Approve Auction Procedures (Docket No. 409).

Bailey nor Cousins has standing. The Court held a final evidentiary hearing, limited to the standing issues, and took the matter under advisement. After considering the evidence, the Court finds and concludes that 1) Cousins' transferee, Leaves & Shredders, Inc. ("L&S") has standing to object to the Motion to Sell, the Motion to Assume and Assign, and the Motion to Approve Auction Procedures (together, the "Escrow Motions") because it has a colorable claim to the funds in the escrow accounts that are the subject of the Escrow Motions; and 2) Bailey does not have standing to object to the Escrow Motions.

BACKGROUND, PROCEDURAL HISTORY, AND FINDINGS OF FACT

Sandia Tobacco filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 19, 2016. Sandia Tobacco is a cigarette and tobacco manufacturer. In 1998, the Attorneys General of forty-six states (including New Mexico), the District of Columbia, and five Territories (together, the "States") entered into a Master Settlement Agreement ("MSA") with four major cigarette and tobacco manufacturers to resolve complaints against the manufacturers for health problems caused by use of their products. Manufacturers that did not enter into the MSA are referred to as Non-Participating Manufacturers ("NPMs"). Sandia Tobacco is a NPM. *See* Exhibit 4.

NPMs are subject to escrow statutes enacted by the States. The escrow statutes require NPMs to establish escrow accounts, called Qualified Escrow Funds ("QEFs"). *See*, *e.g.*, N.M.S.A. 1978 § 6-4-13(A)(2) (requiring any tobacco product manufacturer selling cigarettes to consumers within the state to either become a participating manufacturer of the MS0A, or place funds into a "qualified escrow fund"). A NPM must deposit certain amounts into a QEF based on the number of cigarette units sold. *Id.* The QEFs are held for the benefit of the States in which an NPM sold its cigarettes and are to be used to pay any judgment or settlement obtained by a State

against an NPM. *See, e.g.,* N.M.S.A. 1978 § 6-4-13(B)(1) (providing that funds placed in a QEF are to be released "to pay a judgment or settlement on any released claim brought against a tobacco product manufacturer by the state"). Any funds remaining in a QEF twenty-five years after first deposited can be released to the tobacco manufacturer. *See, e.g.,* N.M.S.A. 1978 § 6-4-13(B)(3) ("to the extent not released from escrow under Paragraphs (1) or (2) of this subsection, funds shall be released from escrow and revert back to such tobacco product manufacturer twenty-five years after the date on which they were placed into escrow.").

On October 29, 2013, Sandia Tobacco entered into an Escrow Agreement with New Mexico Bank and Trust ("NMBT"). *See* Exhibit 4. The Escrow Agreement defines Sandia Tobacco as the "Company," establishes a QEF and associated sub-accounts for the deposit of funds as required under the applicable NPM statutes, and provides further that "funds shall be released from escrow and revert back to the Company [Sandia Tobacco] twenty-five (25) years after the date on which the applicable annual installments thereof were placed into escrow." Escrow Agreement, Section 3, ¶ (f)(iii). The Escrow Agreement also provides that interest earned on the escrowed funds is payable to the "Company." *Id.* at Section 3, ¶ (h)(i).

In November of 2006, Sandia Tobacco entered into a Private-Label Supply Agreement with Fresh Choice Tobacco Company ("Fresh Choice"). *See* Exhibit 5. The Private-Label Supply Agreement identifies Sandia Tobacco as the "Supplier" and Fresh Choice as "Buyer." *Id.* Attached to the Private-Label Supply Agreement as Exhibit A, is a Product and Prices sheet. *Id.* The Product and Prices sheet includes the following provisions:

> <u>Master Settlement Payment Provision.</u> BUYER agrees that SUPPLIER will add an additional $4.29 per carton for 2006 to the base price for product sold into full MSA states. BUYER agrees to make aware their intention in writing 30 days prior to selling the product into any MSA state. SUPPLIER will respond in writing the additional cost for the MSA, as the price will increase annually in accordance with the Master Settlement Agreement, Exhibit C, in order to account for inflation.

> a. <u>Allocation of MSA monies.</u> All MSA monies (principal and any interest thereon) received by SUPPLIER from BUYER pursuant to Section 2(d), above, shall be allocated to Cousins, Inc.; Cousins, Inc. being owner of the *Fresh Choice* brand and BUYER being a d/b/a of Cousins, Inc.[3] Cousins, Inc.'s principal place of business being located at 4477 Park Road, Benica, CA 94510.
>
> BUYER shall only be entitled to receive the monies allotted to them under this section 2(d) upon the release of the MSA escrowed monies pursuant to the Master Settlement Agreement. SUPPLIER is under no obligation or duty, whatsoever, to pay BUYER these monies, but only use its best efforts to facilitate distribution of BUYER's allocated share, if and when, released from MSA escrow.

Product and Prices sheet, ¶ 2(d)(a).

The additional fee per carton added to the base price for the cigarettes Sandia Tobacco manufactured for Cousins under the Private-Label Supply Agreement was intended to fund certain of the escrow accounts (the "Sub-Accounts") under the Escrow Agreement as required under the MSA. Cousins paid the funds that Sandia deposited into the Sub-Accounts.

Historically, at the direction of Sandia Tobacco, NMBT paid the interest earned on the Sub-Accounts to Cousins and/or Marilyn Roscoe who received the funds on behalf of Fresh Choice. At some point Sandia Tobacco ceased manufacturing cigarettes for Cousins. After Sandia Tobacco stopped manufacturing cigarettes for Cousins, Sandia Tobacco continued to direct NMBT to pay the interest earned on the Sub-Accounts to Cousins per the Private-Label Supply Agreement. During that time, Sandia Tobacco did not pay taxes on the interest from the Sub-Accounts paid to Cousins. In 2018, Sandia Tobacco's principal, Donna Woody, directed NMBT to stop sending the interest payments from the Sub-Accounts to Cousins. *See* Exhibit M. The last interest payment Cousins received from the Sub-Accounts was in April of 2018.

---

[3] It is unclear whether Cousins, Inc., the party identified in the Product and Prices sheet attached to the Private-Label Supply Agreement, and Cousins Distributing, Inc. are different entities, whether the reference to Cousins, Inc. in the Product and Prices sheet was a mistake, or whether Cousins, Inc. and Cousins Distributing, Inc. are the same entity.

In June of 2018, counsel for Sandia Tobacco sent email correspondence to Jeremy Chapman, with a copy to John Roscoe, stating that "Sandia does not claim any beneficial ownership in the Cousins' escrow accounts or interest therefrom" and that "Sandia is not selling your brands or your escrow account." *See* Exhibit L. Prior email correspondence from Jeremy Chapman on behalf of Cousins sent to counsel for Sandia Tobacco requests that "[t]he accounts that hold the funds belonging to Cousins for the beneficiary states should be segregated from any other Sandia escrow accounts" and that "[t]his should demonstrate Cousins' 100% interest in their own escrow funds." *Id.*

*Cousins and Successor Entities*

Marilyn Roscoe is the matriarch of the Roscoe family. Her family has been in the tobacco business since 1957. She and her husband named the corporation "Cousins" for their eight grandchildren. The grandchildren were the owners of Cousins. Ms. Roscoe served as president of Cousins while it operated, but was not a shareholder. She also served as a director. Cousins dissolved in 2017. *See* Exhibit 6. Prior to the dissolution, Ms. Roscoe claims that the owners of Cousins renounced their ownership rights to her, and that she became the owner of all the assets of Cousins. *See* Exhibit F. Before and at the time of Cousins' dissolution, Ms. Roscoe also operated another company, L&S, as a sole proprietorship. Ms. Roscoe intended to incorporate L&S and to list all of the assets and liabilities of Cousins on the balance sheet for L&S. L&S was incorporated in California in February of 2018. Ms. Roscoe is the president and sole shareholder of L&S. Ms. Roscoe testified further that after Cousins transferred its interest in the Sub-Accounts to her, Ms. Roscoe assigned that interest to L&S.

A document titled Consolidation of Companies, dated June 3, 2018, recites that "Marilyn J. Roscoe completely owned the following companies: Cigarettes Cheaper!, Cousins

Distributing, Truth & Liberty Manufacturing, and Just Good Tobacco." *See* Exhibit 8. The Consolidation of Companies states that Marilyn Roscoe "consolidated the accounts" of Just Good Tobacco, Cousins, and Truth & Liberty Manufacturing into Leaves & Shredders effective on 2/5/2016" and that the taxes for L&S for 2016 and 2017 were included as part of Ms. Roscoe's personal tax returns. *Id.* The Consolidation of Companies also states that the "Master Settlement escrow accounts are listed on the Leaves & Shredders balance sheets along with a contra account." Marilyn Roscoe, Evan Fenton Roscoe, Sara Ruth Roscoe, and Donna Mae Roscoe all signed the Consolidation of Companies. *Id.*

L&S claims to be Cousins' successor, and the successor to Cousins' claimed interest in the Sub-Accounts. *See* Exhibit F. Ms. Roscoe testified that the interest in the Sub-Accounts is noted on the books of L&S as an asset through a book entry.

*Bailey as Judgment Holder*

In 2007, Bailey obtained a judgment against Cousins in the amount of $1,128,630.87, plus post-judgement interest ("Judgment"), in the Circuit Court of Lunenberg County, Virginia. *See* Exhibit E.[4] Bailey renewed its Judgment in 2017. *See* Exhibit 12.

On July 30, 2018, Sandia Tobacco filed a motion under 11 U.S.C. § 363(f) to sell its interest in the Sub-Accounts. *See* Motion to Sell – Docket No. 366. L&S filed an objection to the Motion to Sell on August 20, 2018. *See* Objection by Successor to Cousins Distributing to Motion to Release, Assign, or Transfer Interest in Certain Escrow Accounts Owned by Cousins, Inc. ("L&S Objection") – Docket No. 366. In the L&S, L&S represents itself to be the "successor to Cousins Distributing, Inc.'s right through Fresh Choice in the Cousins Sub-Accounts." *Id.* Sandia Tobacco did not file a motion to strike the L&S Objection. Bailey and

---

[4] The Final Order and Judgment imposed joint and several liability on Cousins and Five Friends. *See* Exhibit E.

-6-

Cousins also filed objections to the Motion to Sell. *See* Docket Nos. 370 and 368, respectively. Sandia Tobacco did not file a motion to strike the objections to the Motion to Sell filed by Cousins and Bailey. Rather, Sandia Tobacco filed an Omnibus Reply to Objections to Debtor's Motion Pursuant to 11 U.S.C. § 363(f) and (m) to Sell Property Free and Clear of Interests (Doc. #357). *See* Docket No. 377. Sandia Tobacco filed the Escrow Motions on October 11, 2018. *See* Docket Nos. 380 and 382.

On October 15, 2018, Sandia Tobacco filed Debtor's Motion to Reject Executory Contract – Fresh Choice Tobacco Company ("Motion to Reject"). *See* Docket No. 389. The Motion to Reject seeks to reject the Private-Label Supply Agreement. *Id.* On December 19, 2018, the Motion to Reject was granted by default, after service of notice and expiration of the objection deadline. *See* Default Order Granting Debtor's Motion to Reject Executory Contract – Fresh Choice Tobacco Company – Docket No. 422.

DISCUSSION

A. Standing[5] as a "Party in Interest"

The Bankruptcy Code contemplates that "parties in interest" may appear and be heard on matters raised in Chapter 11 cases. 11 U.S.C. § 1109. Pursuant to 11 U.S.C. § 1109(b),

---

[5] Standing takes three forms: constitutional standing, prudential standing, and statutory standing. *See The Wilderness Society v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir.2011) (en banc) (explaining that constitutional standing under Article III of the Constitution enforces the case-or-controversy requirement, and prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction") (internal quotation marks and citation omitted); *Carolina Cas. Ins. Co. v. Pinnacol Assurance*, 425 F.3d 921, 926 (10th Cir.2005) ("Congress may extend the right to sue under a statute to any plaintiff that has constitutional standing. It may also, however, place additional restrictions on who can sue, imposing requirements of 'statutory standing.'") (citation omitted). In the bankruptcy context, challenges to a party's standing often relate to the bankruptcy concept of "party in interest." *In re Alcide,* 450 B.R. 526, 534 (Bankr. E.D. Pa. 2011). "Party in interest" standing under 11 U.S.C. § 1109 does not, however, "trump[ ] the doctrines of constitutional and prudential standing." *In re A.P.I., Inc.,* 331 B.R. 828, 857 (Bankr. D. Minn. 2005) *aff'd sub nom. OneBeacon Am. Ins. Co. v. A.P.I., Inc.*, No. CIV 06-167-JNE, 2006 WL 1473004 (D. Minn. May 25, 2006). "[A] party claiming to be a party in interest must still satisfy the general requirements of the standing doctrine." *In re Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997) (citing *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992)).

> A party interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, and equity security holder or any indenture trustee may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b). "Party in interest" under 11 U.S.C. § 1109(b) is not limited to the enumerated examples contained in the statute, *In re Kaiser Steel Corp.,* 998 F.2d 783, 788 (10th Cir. 1993) (citing *In re Amatex Corp.,* 755 F.2d 1034, 1042 (3d Cir. 1985)), and the term is generally given a broad though not "infinitely expansive" construction. *In re Martin Paint Stores,* 207 B.R. 57, 61 (S.D.N.Y. 1997). Whether a litigant has standing as a "party in interest" must be considered on a "case by case basis," *Kaiser Steel,* 998 F.2d at 788, and "depends upon the purposes of the Code provision in question." *Martin Paint,* 207 B.R. at 61. Whether a party has sufficient standing to be heard on a matter raised in a bankruptcy case depends on "'whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation.'" *Kaiser Steel,* 998 F.2d at 788 (quoting *Amatex Corp.,* 755 F.2d at 1042). In general, if a party's "'pecuniary interests are, directly affected by the bankruptcy proceedings'" the party has standing as a party in interest under 11 U.S.C. § 1109. *In re Alpex Computer Corp.,* 71 F.3d 353, 356 (10th Cir.1995) (quoting *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 5 F.3d 750, 756 (4th Cir.1993)).

Here, Cousins and Bailey seek to be heard in opposition to Sandia Tobacco's motion to sell its interest in the Sub-Accounts pursuant to 11 U.S.C. § 363. That Bankruptcy Code section allows a Chapter 11 debtor to sell property of the estate free and clear of interests, which includes liens. *See* 11 U.S.C. § 11 U.S.C. § 1107(a) (conferring trustee rights on the chapter 11 debtor in possession); 11 U.S.C. § 363(b)(1) and (f) (authorizing the trustee to sell "property of the estate" "free and clear of any interest in such property"). As explained below, Cousins'

transferee, L&S, has standing as a party in interest to object to Sandia Tobacco's request to sell the Sub-Accounts, while Bailey does not.

B. Cousins' Transferee, L&S, has Standing

Section 363(b)(1) empowers a debtor in possession to "sell . . . property of the estate." 11 U.S.C. § 363(b)(1). Section 363(f) governs sales of property of the estate "free and clear of any interest in such property of an entity other than the estate." 11 U.S.C. § 363(f).[6] A motion to sell property under 11 U.S.C. § 363(f) "cannot be used to transform property of others into property of the estate." *In re Silver Beach, LLC*, BAP No. NV-09-1049, 2009 WL 7809002, at *6 (9th Cir. BAP Nov. 3, 2009). Thus, before the Court can approve a sale of the Sub-Accounts, Sandia Tobacco must establish that it has an interest in the Sub-Accounts that is property of the estate. *See In re Popp*, 323 B.R. 260, 266 and 268-71 (9th Cir. BAP 2005) (holding that the court must first resolve disputed questions concerning ownership before authorizing the sale of real property free and clear of liens; "even before one gets to Section 363(f), Section 363(b) . . . requires that the estate demonstrate that the property it proposes to sell is 'property of the estate.'"); *Silver Beach,* 2009 WL 7809002, at *7 ("Before the bankruptcy court may authorize a sale under authority of section 363(b)(1), the court must determine whether the estate actually has an interest in the property to be sold."); 3 Collier on Bankruptcy ¶ 363.06 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[I]f the estate's ownership of the property is disputed, the court must determine who owns the property before it may authorize a sale free and clear.") (citing *Popp*, 323 B.R. 260).[7] Cousins' claim to the Sub-Accounts places in question the issue of whether

---

[6] Subsection (f) of 11 U.S.C. § 363 authorizes a sale of property of the estate under 11 U.S.C. § 363(b) "free and clear of any interest in such property of an entity other than the estate only if . . . such interest is in bona fide dispute." 11 U.S.C. § 363(f)(4). "Such interest" as used in subsection (f)(4) the statute refers to the "interest in such property of an entity other than the estate." *Id.*

[7] *But see In re Genesys Research Inst., Inc.*, No. 15-12794-JNF, 2016 WL 3583229, at *20 (Bankr. D. Mass. June 24, 2016) ("Section 363(f)(4) does not contemplate or require that the court resolve or determine any dispute about

Sandia's claimed interest in the Sub-Accounts is property of the estate subject to sale under 11 U.S.C. § 363(b) and (f).[8]

Sandia Tobacco reasons that Cousins lacks standing because Cousins does not have an interest in the Sub-Accounts themselves. Rather, Sandia Tobacco contends that Cousins holds a mere contract right under the Private-Label Supply Agreement, and that, because Sandia Tobacco rejected the contract, Cousins' claim is limited to a potential contract claim for rejection damages. Whether this argument will prevail is a question to be decided on the merits before the Court rules on the Motion to Sell. For purposes of standing to object to the Motion to Sell, it is sufficient that Cousins' transferee, L&S, has a "colorable claim" to the Sub-Accounts. *Cf. In re Castro*, 503 Fed.Appx. 612, 615 (10th Cir. 2012) (creditor with a colorable claim of a lien against the debtor's property had standing as a party in interest to seek relief from the automatic stay); *In re Duwaik*, No. 17-CV-00142-MSK, 2017 WL 4772819, at *6 (D. Colo. Oct. 20, 2017), *aff'd*, 730 Fed.Appx. 715 (10th Cir. 2018) (for purposes of filing a request for relief from the automatic stay, a creditor has standing as a "party in interest" by demonstrating that it holds a 'colorable claim') (citations omitted); *In re Mid-South Business Assocs., LLC*, 555 B.R. 565, 569 (Bankr. N.D. Miss. 2016) (party with a colorable claim of being an equity security holder and manager of the debtor had standing as a party in interest under § 1109 to file a motion to dismiss). The evidence now before the Court establishes, at a minimum, that 1) Cousins paid the

---

ownership before a sale hearing, but rather requires only an examination of whether there is an objective basis for either a factual or legal dispute about ownership.") (citing *In re Revel AC, Inc.*, 802 F.3d 558, 573 (3d Cir. 2015)).
[8] Cousins' interest in the Sub-Accounts appears to be in bona fide dispute. But the threshold question for a sale under 11 U.S.C. § 363(b) is whether the property to be sold is property of the estate. *See In re Robotic Vision Sys., Inc.*, 322 B.R. 502, 508 (Bankr. D.N.H. 2005) ("The threshold determination as to the existence of a bona fide dispute necessarily requires a finding that the disputed property is or could become property of the bankruptcy estate.") (citations omitted); *In re Wintz Companies*, 230 B.R. 840, 844 (8th Cir. BAP 1999), *aff'd*, 219 F.3d 807 (8th Cir. 2000) ("Bankruptcy courts are particularly admonished to examine their authority to order a sale under section 363(f) if title documents indicate that the estate possesses no substantial ownership rights or if any bona fide dispute over the property exists between third parties.").

funds that were ultimately deposited into the Sub-Accounts; 2) the Private-Label Supply Agreement provided that Cousins would be entitled to receive the monies allocated to them upon the release of the escrowed funds under the MSA; 3) Sandia Tobacco's principal understood the Private-Label Supply Agreement to mean that, after the twenty-five year release period under the MSA, Cousins would get the money; and 4) Cousins transferred its interest in the Sub-Accounts to L&S. This is sufficient to establish L&S's standing to object to the Motion to Sell.

L&S is a "party in interest" whose pecuniary interests will be affected by the outcome of the Motion to Sell. It has asserted a colorable claim that it is entitled to the funds in the Sub-Accounts, and "everyone with a claim to the *res* has a right to be heard before the *res* is disposed of since that disposition will extinguish all claims." *Matter of James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) (citation omitted). L&S also meets the Constitutional standing requirements of injury in fact, causation, and redressability,[9] and the prudential requirement to assert its own legal rights and interests, not a "generalized grievance" shared by many. *Warth v. Seldin,* 422 U.S. 490, 499 (1975). Cousins, through its transferee, L&S, has asserted an interest in the Sub-Accounts that Sandia Tobacco wants to sell. However, Sandia Tobacco may only sell property of the estate. The Court must therefore determine whether Sandia Tobacco or L&S owns the future interest in the Sub-Accounts before the Court can approve a sale of the Sub-Accounts. A sale of the Sub-Accounts to a third party absent a determination of ownership would injure L&S. Moreover, even if L&S only has a claim for rejection damages, L&S, as creditor, is

---

[9] *See Carolina Cas. Ins. Co. v. Pinnacol Assurance*, 425 F.3d 921, 926 (10th Cir. 2005) (constitutional standing requires plaintiff to "show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (quoting *Friends of the Earth, Inc. v. Laidlaw Env. Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (remaining citations omitted)). *See also Kane Cnty.,* 632 F.3d at 1168 (to satisfy the requirements of constitutional standing, "the plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress.") (internal quotation marks and citation omitted).

a party in interest with standing to object. *See* 11 U.S.C. § 1109(b) ("A party in interest, including . . . a creditor, . . . may appear and be heard on any issue in a case under this chapter."); *In re Keim*, 212 B.R. 493, 497-98 (Bankr. D. Md. 1997) (unsecured creditor has standing as party in interest to object to the debtor in possession's motion to sell estate property).

Sandia Tobacco also questions whether Cousins' dissolution strips Cousins of standing as a real party in interest.[10] "'[S]tanding and real party in interest are two distinct concepts': (1) standing requires that a plaintiff suffer an injury-in-fact fairly traceable to the actions of the defendant that is redressable by the court; and (2) a real party in interest must be 'the person who possesses the right to be enforced.'" *CPI Card Group, Inc. v. Multi Packaging Solutions, Inc.*, No. 16-cv-02536-MEH, 2017 WL 5714320, at *4 (D. Colo. Nov. 28, 2017) (quoting *Mitchell Food Products v. United States*, 43 Fed.Appx. 369, 369 (Fed. Cir. 2002)). *See also K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1154 n. 7 (10th Cir. 1985) ("We believe . . . that the standing challenge is not properly raised in connection with real party in interest analysis under Rule 17(a)."). The evidence now before the Court establishes that L&S, as Cousins' transferee, is the real party in interest under Fed. R. Civ. P. 17(a), which requires an action to "be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). [11]

L&S, as the real party in interest, may be substituted for Cousins. *See* Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest, until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."). *Cf. Frankel v. Painwebber Inc.,* No.

---

[10] The Motion to Sell also questions whether the Private-Label Supply Agreement authorizes Cousins to transfer any interest under the agreement absent Sandia Tobacco's consent. *See* Motion to Sell, ¶¶ 31 – 41. Sandia Tobacco did not raise this argument as part of its objection to Cousins' standing, and the Court need not address it to resolve the limited question of standing.

[11] Rule 17 is made applicable to contested matters in bankruptcy cases by Fed. R. Bankr. P. 9014(c) and Fed. R. Bankr. P. 7017.

CIV 00-884-LH/KBM, 2001 WL 37124757, at *2 (D.N.M. Nov. 29, 2001) ("The crucial difference between standing and real party in interest . . . lies in the plaintiff's ability to correct a defect. . . . [A] correction of the real party in interest may apply retroactively to the initial filing . . . in many instances.").

C. Bailey lacks Standing

Bailey contends that it has standing to object to the Escrow Motions because its pecuniary interests will be affected by the outcome those motions. Bailey reasons that it will be harmed by a sale of the Sub-Accounts because it holds a judgment against Cousins, and the Sub-Accounts that Cousins claims belong to Cousins are the only significant asset from which Bailey may obtain recovery. Bailey stakes its standing, in part, on the California Corporate Code provisions applicable to dissolved corporations. *See* Cal. Corp. Code §§ 2009 and 2010.[12] None of the provisions that Baily relies upon permit a creditor of a dissolved corporation to sue in the creditor's own name to collect upon debts owed to the dissolved corporation, or to assert claims that belong to the dissolved corporation or its successor. To the contrary, "[a] corporation which is dissolved nevertheless continues to exist for the purposes of . . . prosecuting actions . . . and enabling it to collect . . . obligations." Cal. Corp. Code § 2010(a). Furthermore, "[a]ny assets inadvertently or otherwise omitted from the winding up continue in the dissolved corporation for the benefit of the persons entitled thereto upon dissolution of the corporation and on realization shall be distributed accordingly." Ca. Corp. Code § 2010(c). Under these provisions, Cousins can assert its claim to the Sub-Accounts even after its dissolution.

---

[12] Cal. Corp. Code § 2009 is titled "Recovery of improper distributions; ratable contribution, 'process of winding up'"; Cal. Corp. Code. §2010 is titled "Continuation after dissolution; purposes; pending actions or proceedings; distribution of assets omitted from winding up." Bailey also cites Cal. Civ. P. Code § 695.010, which provides that "all property of the judgment debtor is subject to enforcement of a money judgment." Cal. Civ. P. Code § 695.010. But whether Cousins, or its transferee, L&S, has a property interest in the Sub-Accounts has yet to be determined. This California statute does not confer a right upon a judgment creditor to assert a claim that certain property is property of the debtor in an effort to enforce a money judgment.

In the bankruptcy arena, courts consistently find that a creditor of a creditor does not have standing to participate in the debtor's bankruptcy case. *See In re Alliance Consulting Grp., LLC,* 588 B.R. 169, 174 (Bankr. S.D. Miss. 2018), *aff'd sub nom. Plant Materials, LLC v. Alliance Consulting Grp., LLC*, 596 B.R. 851 (S.D. Miss. 2019) ("[C]ourts have consistently held that creditors of creditors do not have standing to participate in bankruptcy cases.") (collecting cases); *In re Lehman Bros. Holdings Inc.,* No. 08-13555-JMP, 2012 WL 1057952, at *3 (S.D.N.Y. Mar. 26, 2012) ("[A] creditor once removed does not have party-in-interest standing."). *Cf. In re Protech Coating Services, Inc.,* 479 B.R. 611, 613-14 (Bankr. M.D. Fla. 2012) ("[N]on-creditors ordinarily do not have standing to object to a compromise."); *Matter of Comcoach Corp.,* 19 B.R. 231, 234 (Bank. S.D.N.Y. 1982) ("A noncreditor of a debtor, even though owed a debt by a creditor of the debtor, does not have standing to seek relief from the automatic stay for the purpose of recovering on its claim.") (citation omitted). That is the situation here. Bailey's potential interest is simply too far removed from Sandia Tobacco's bankruptcy case and the asset Sandia Tobacco seeks to sell to confer standing. Bailey is not a creditor of Sandia Tobacco; nor does it have a direct claim to the Sub-Accounts. Its connection to this bankruptcy case and Sandia Tobacco's request to sell its interest in the Sub-Accounts is simply too remote. In addition, Bailey lacks standing under prudential standing principles which generally prohibit "a litigant's raising another person's legal rights." *Kane Cnty.,* 632 F.3d at 1168 (internal quotation marks and citation omitted). Even though Bailey is Cousins' judgment creditor, Bailey's objection to the Motion to Sell on grounds that Sandia Tobacco does not own the Sub-Accounts asserts Cousin's (or its transferee's) legal rights, rather than its own.

D. Conclusion

Based on the foregoing, the Court concludes that Cousins' transferee, L&S, has standing to object to the Motion to Sell, the Motion to Approve Auction Procedures, and Motion to Assume and Assign. Bailey's interest as a judgment creditor of Cousins is too remote and tenuous to confer standing on Bailey to appear and be heard in Sandia Tobacco's bankruptcy case. The Court will enter separate orders consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:  July 26, 2019

COPY TO:

William F. Davis
Attorney for Debtor
6709 Academy NE, Suite A
Albuquerque, NM 87109

William Stewart Bernheim
Attorney for Cousins Distributing, Inc., Leaves and Shredders, Inc. and Marilyn Roscoe
Bernheim & McCready
255 North Lincoln St
Dixon, CA 95620

Dylan O'Reilly
Attorney for Bailey Tobacco Corporation
Miller Stratvert P.A.
PO Box 1986
Santa Fe, NM 87504-1986